65 N.J. Super. 336 (1959)
167 A.2d 812
ELVIRA DI PETRILLO, WIDOW OF CARLO DI PETRILLO, PETITIONER-RESPONDENT,
v.
BOROUGH OF LEONIA, A MUNICIPAL CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1959.
Decided November 16, 1959.
*337 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Paul B. Thompson argued the cause for respondent-appellant (Messrs. Emory, Langan, Lamb and Blake, attorneys).
Mr. Herman M. Wilson argued the cause for petitioner-respondent (Mr. John J. Sullivan, Jr., attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff's husband died suddenly while at work as a garbage collector for the defendant municipality December 9, 1957, at the age of 55. She sought workmen's compensation on the theory that the decedent had sustained a work-connected heart attack. Recovery was denied in the Workmen's Compensation Division but allowed on appeal by the Bergen County Court.
This case is typical of the inherent difficulties attendant upon determination of such a case because of the competing medical theories as to the likelihood of causal connection between physical effort or stress and coronary thrombosis or insufficiency, see Aromando v. Rubin Bros. Drug Sales Co., 47 N.J. Super. 286 (App. Div. 1957), certification denied 26 N.J. 244 (1958); McClain v. City of Woodbury Bd. of Education, 30 N.J. 567 (1959); and because of the presumption that injury from heart disease is ordinarily the result of natural physiological causes, Yeomans v. Jersey City, 27 N.J. 496, 509 (1958); Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958).
Since the Ciuba case, supra, it is no longer an essential prerequisite of recovery in a heart case that there be shown a history of unusual strain or exertion attendant upon the attack; yet, in seeking the existence of the presently controlling criterion of actual causal or contributive relation between the work and the attack, it remains of some probative significance whether the workman was at the time doing something to which he was not accustomed or which involved a greater strain or burden than that to which he was *338 accustomed. Loew v. Borough of Union Beach, 56 N.J. Super. 93, 106 (App. Div. 1959); certification denied 31 N.J. 75 (1959); cf. Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959).
It is evident that a close factual case like that before us cannot be resolved by a simple rule of thumb. In the final analysis, we must determine whether the plaintiff has carried her burden of proof of establishing the hypothesis of causal connection or contribution between work and heart-accident by evidence of such weight as to engender "the feeling of probability" as to such relationship, rather than that of mere possibility. Ciuba v. Irvington Varnish & Insulator Co., supra (27 N.J., at p. 140). In the present case, after a careful review of all the evidence, which we shall not here recount in full detail, we find that feeling engendered in our minds.
This decedent for ten years had a history of diabetes, which the medical experts on both sides agree predisposes toward arteriosclerosis, a natural forerunner of coronary artery disease. During the year preceding his death he was ill and out of work for extended periods of time, suffering from such ailments as bronchitis, sinusitis and asthma, as well as the diabetes. His work included, at different times, general road maintenance as well as garbage disposal. The latter work was considered more difficult, but the decedent preferred it because he generally could finish earlier, anywhere from 1:00 P.M. to 2:30 P.M., and could share in Christmas gifts from householders. However, during the several months preceding the fatal day his assignments to garbage removal were considerably less frequent than to the road detail. After being out, ill, from June 18 to July 31, 1957, he worked on roads August 1 to September 30; on garbage from October 1 to October 5 (to replace an absentee); on roads from October 7 to November 9; on garbage from November 11 to November 21; and on roads from November 22 to December 5. On Friday, December 6, and Saturday, December 7, he worked on garbage. On *339 Sunday, December 8, he was off, and Monday, December 9, was the day of death.
Decedent's work-day commenced on December 9 at 7:30 A.M. He worked the garbage detail with two other men on the crew all day until 4:00 P.M., when he suddenly dropped dead while going to the back of a house to fill his garbage bucket. There had been a lunch period of 30 to 45 minutes. The work consisted of walking from the street, where the truck was standing, to the back of the houses, filling a canvas bucket holding 20 to 30 pounds of garbage from the householders' garbage receptacles, carrying the bucket out to the street, and emptying it into the truck. Monday was an abnormally heavy garbage day because of the intervening Sunday, and the men still had an hour or so to work before finishing the route when decedent was stricken. There is evidence that the decedent was conscientious and a steady worker.
At about 11:00 A.M. that day decedent complained of a "hurting in his chest." However, he later ate a substantial lunch and said he felt fine. He did not again complain of pain before he was found lying dead on a driveway, his empty bucket nearby.
We are not going to review the testimony of the opposing medical experts in detail. There was no autopsy. Nor did the decedent's treating physician testify. Suffice it to say that Dr. Eisenstein, a specialist in internal medicine, gave it as his opinion on the basis of a hypothetical question that the decedent died of acute myocardial infarction and that the nature of the work and the death were causally related. He ascribed his conclusion to four factors: (a) diabetes of a 55-year-old man, indicating coronary artery disease and infarction; (b) chest pain earlier on the day of the attack; (c) the heavy nature of the work; and (d) the suddenness of the onset of death. Dr. Kaufman, also testifying upon the basis of a hypothetical question of generally similar import, gave the opinion that there was no relation between the work and death, even assuming death was due to a *340 coronary thrombosis, as to which there was a 50% probability. He attributed death, on that assumption, solely to the "progressive nature of the arteriosclerotic heart disease in a diabetic." Neither medical expert knew or examined the decedent while alive.
We have concluded that the entirety of the relevant circumstances, probatively considered, engenders a justified "feeling of probability" that the work of the decedent caused or at least contributed to his demise at the particular time of his death. While his pathological condition was apparently such that he might have died at any time thereafter, or even at that time, without attendant effort, we find it probable that the nature of the work on the day of death contributed in some degree to the incidence of death at the particular time it struck. Whether the work was, technically, an unusual strain or effort, in the pre-Ciuba sense, is not necessarily material. It was laborious by ordinary standards, was not the decedent's recent regular work, and there was some indication from the evidence that undertaking the garbage detail so soon after his most recent illness was contrary to his treating doctor's advice. Decedent had worked all day and still had an hour or so to go. He was presumably looking forward to the completion of the long Monday stint.
We think the pain that morning, described by Dr. Kaufman as probably anginal in nature, deserves considerable weight on the issue of probability. It was inferably a precursor of the massive attack that felled the decedent that afternoon. Undoubtedly, in view of his previous condition and illnesses, had decedent been accorded medical consultation when that pain appeared, he would have been advised to stop work then and there. There appears to us to be a fair hypothesis of causal connection between work and death, when, after a pain in the morning indicative of coronary trouble, a 55-year-old diabetic with a history of various other illnesses for over a year continues to work at emptying and carrying garbage receptacles the rest of the day until his sudden death from coronary artery disease at 4:00 P.M.
Judgment affirmed.